IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JEFFREY EASTMAN,**
**#S12167,**

       **Plaintiff,**

vs.

**JOHN DOE,**
**VENERIO SANTOS,**
**ROBERT MUELLER,**
**WARDEN KINK,**
**WARDEN STOCK,**
**LISA KREBS,**
**SGT. DOWNES,**
**MAJOR JOHNSON,**
**MAJOR MCABEE,**
**WALKER,**
**DEBORAH ZELASKO,**
**ROBERT WEGMAN,**
**ANN LAHR,**
**WEXFORD HEALTH, and**
**ILLINOIS DEPARTMENT OF**
**CORRECTIONS,**

       **Defendants.**

Case No. 18-cv-543-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Jeffrey Eastman, an inmate in Taylorville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Big Muddy River Correctional Center ("Big Muddy") and Centralia Correctional Center ("Centralia"). In his

Complaint, Plaintiff claims the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment and have failed to accommodate his disabilities. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims

against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

### The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff was born with a medical condition that causes the bones of his feet and ankles to collapse out of alignment when weight is put on them. (Doc. 1, p. 24). This misalignment and malformation causes Plaintiff's bones to bear weight in an unnatural way, and as a result, Plaintiff has difficulty walking. *Id.* This condition "causes extreme pain and discomfort that is only alleviated if [Plaintiff is] wearing braces that hold the ankles and feet in correct alignment." *Id.* Plaintiff suffers

from three types of pain: stabbing pain when he puts weight on his feet and ankles without corrective footwear; a dull, throbbing, burning pain that started in February 2015 and continues; and a sharp, sudden, stabbing, debilitating pain that began in March 2016 and occurs without warning when Plaintiff does not have something to support himself with, such as a cane. *Id.* This pain has caused Plaintiff to fall many times. *Id.*

As a child, Plaintiff wore custom-fitted orthopedic braces until he was approximately 12-years old. *Id.* While Plaintiff was imprisoned at Big Muddy, Defendant Dr. John Doe prescribed him foam insoles, which he received August 20, 2014. *Id.* After he was transferred to Centralia, Plaintiff received medical lay-ins after suffering injuries on March 5, 2016 and April 11, 2016. *Id.* Dr. Santos issued Plaintiff the same type of foam insoles on March 5, 2016 after his first injury. *Id.* Dr. Santos ordered an X-ray after the April 11, 2016 injury. *Id.* The X-ray "showed the presence and progression of permanent damage/arthritis in the same areas affected by [Plaintiff's] medical condition." *Id.*

Dr. Garcia issued Plaintiff a slow-walker pass on September 21, 2016 and prescribed Plaintiff ACE wraps. *Id.* On October 26, 2016, Garcia renewed the slow-walker pass and issued Plaintiff a "No Prolonged Standing Order." *Id.* On November 9, 2016, Garcia referred Plaintiff back to Dr. Santos for orthopedic shoes, but Santos denied them. *Id.* Garcia recommended orthopedic shoes on March 15, 2017. *Id.* Santos issued Plaintiff AFO braces on July 3, 2017, which Plaintiff received on July 17, 2017. *Id.* Santos also issued Plaintiff gel insoles on

August 18, 2017. (Doc. 1, p. 25). Dr. Baker issued Plaintiff a cane and ordered X-rays on September 22, 2017. *Id.* These X-rays showed "bi-lateral flat feet deformity." Baker ordered lace-up ankle supports on November 28, 2017, which Plaintiff received on February 8, 2018. *Id.*

All of the medical devices issued by the Illinois Department of Corrections ("IDOC") and Wexford have no corrective ability. *Id.* The insoles and gel do not provide ankle support or correct the ankles or arches. *Id.* The AFO braces are not designed for Plaintiff's medical condition and do not correct his bone alignment. *Id.* The ACE wraps are also not corrective but instead "simply wrap around the foot." *Id.* The lace-up supports provide stiff support for Plaintiff's ankles but do not correct the alignment of his ankles or arches and "so are ineffective against [his] medical condition." *Id.*

From October 2011 until July 2014, Plaintiff's complaints regarding his medical condition were ignored, as were his requests to see an orthopedic specialist. *Id.* These requests and complaints were directed at John Doe. (Doc. 1, p. 33). Then from October 2014 to November 2015 when Plaintiff complained that his foam insoles were ineffective, he was also ignored. (Doc. 1, p. 25). These events took place at Big Muddy. *Id.*

At Centralia, Dr. Santos refused Plaintiff pain medication on two separate occasions. *Id.* During every visit with Santos after his March 5, 2016 fall, on at least 11 occasions, Plaintiff asked for and was denied a mobility aid to prevent falls, orthopedic shoes, and an exam with an orthopedic specialist. *Id.* Even after

Dr. Garcia recommended orthopedic shoes, and after Plaintiff complained of falls, Santos insisted on issuing Plaintiff foam insoles knowing that he was already wearing the same insoles when he was injured. *Id.* Santos also would not schedule Plaintiff for any type of rehabilitation services after discovering that Plaintiff had arthritis. *Id.*

Lisa Krebs, the Health Care Unit administrator, refused to intervene and allow Plaintiff to be seen by an orthopedic specialist. *Id.* She also refused to investigate Plaintiff's claims of ineffective treatment, and she lied in her written response to Plaintiff, which was later used to deny Plaintiff relief in a grievance. *Id.* Warden Mueller failed to investigate Plaintiff's claims of medical malpractice and deliberate indifference against Santos, as well as Plaintiff's claims "of medical device interference by a black box device against Majors Johnson and McAbee." (Doc. 1, p. 26). He also refused to intervene and stop these alleged abuses. *Id.* Warden Kink and Warden Stock refused to investigate Plaintiff's claims of medical device interference by a black box device, and refused to intervene and stop these alleged abuses. *Id.*

Sgt. Downes forced Plaintiff to stand against medical orders, "resulting in 11 falls and near-falls, and he also sadistically laughed about a comment he made of 'kicking [Plaintiff's] legs out from under [him].'" *Id.* He could have allowed Plaintiff to sit down at a stone bench feet away from where he was standing. *Id.*

Johnson and McAbee ignored Plaintiff's medical needs by forcing him to wear a black box device though it prevented Plaintiff from being able to use his

cane. *Id.* They also refused to swap the black box for waist chains, which would have allowed Plaintiff to use his cane, or the cane for a wheelchair, which would have enabled the black box device to be used. *Id.* These solutions would have prevented unnecessary pain and suffering. *Id.* Plaintiff had a "near-fall as a result of Major McAbee's order to use the black box device on Tuesday, October 10, 2017. Major Johnson's unconstitutional order was made on Wednesday, October 4, 2017." *Id.*

Counselors Walker, Zelasko, and Wegman, along with Lahr, refused to allow Plaintiff's grievances to be reviewed by an ADA Coordinator. *Id.* Lahr also refused to investigate Plaintiff's claims in the two grievances that she reviewed. *Id.* "Because of the rules and regulations as stated, Counselors Walker, Deborah Zelasko, and Robert Wegman, along with Ann Lahr, were not permitted to review and answer [Plaintiff's] grievances." *Id.*

Wexford "knowingly employs officials who have a track record for not providing the correct type of care, or outright refusing to provide care at all, for serious medical needs." *Id.* IDOC allowed employees and contractors to ignore Plaintiff's medical needs. *Id.* As a result of his condition and the pain he experiences walking, Plaintiff has missed meals, religious services, recreational periods, job assignment opportunities, mental health services, and other general activities. (Doc. 1, p. 28).

Plaintiff requests a preliminary and permanent injunction requiring that he be seen by an orthopedic specialist, that he receive corrective orthopedic shoes,

and that he be allowed to work "any job assignment that [he] otherwise qualif[ies] for." (Doc. 1, p. 30). Plaintiff also seeks declaratory and monetary relief. (Doc. 1, pp. 30-31).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 5 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** While Plaintiff was at Big Muddy, John Doe showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

**Count 2 –** While Plaintiff was at Big Muddy, John Doe committed Illinois medical malpractice/negligence in his treatment of a deformity and arthritis in Plaintiff's feet and pain associated therewith.

**Count 3 –** Santos, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, Wexford, and IDOC showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

**Count 4 –** Santos, Mueller, Kink, Stock, Krebs, Downes, Johnson, McAbee, Walker, Zelasko, Wegman, Lahr, Wexford, and IDOC committed Illinois medical malpractice/negligence in their treatment or handling of a deformity and arthritis in Plaintiff's feet and pain associated therewith.

**Count 5 –** IDOC violated the Americans with Disabilities Act and the Rehabilitation Act by failing to accommodate Plaintiff's needs

related to a deformity and arthritis in his feet.[1]

As discussed in more detail below, Count 1 will be allowed to proceed past threshold, Count 2 will be dismissed without prejudice, and Counts 3, 4, and 5 will be severed from this action. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Severance

Counts 3, 4, and 5 represent a set of claims unrelated to Counts 1 and 2. Counts 1 and 2 are against John Doe and stem from events that took place at Big Muddy, whereas Counts 3, 4, and 5 are against different defendants and arose largely at Centralia. Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Counts 3, 4, and 5 into a separate action, and shall open a new case with a newly-assigned case number for those claims. A separate merits review shall be conducted in the severed case after it is opened and assigned to a judge. Plaintiff shall be assessed a new filing fee for the severed case.

### Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d

---

[1] Plaintiff has indicated a desire to bring Americans with Disabilities Act and Rehabilitation Act claims against other defendants in this action, but the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA. *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (additional citations omitted).

435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's deformity and arthritis described in the Complaint satisfies the objective component of Count 1 for screening purposes. However, the analysis of these claims does not end there.

The Complaint must also satisfy the subjective component of these claims. To do so, the Complaint must suggest that John Doe exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

This standard is satisfied with respect to Count 1 against John Doe. According to the Complaint, John Doe ignored many of Plaintiff's requests for medical care. (Doc. 1, p. 33). He also refused to allow Plaintiff to be examined by a qualified specialist or issue Plaintiff proper orthopedic shoes and instead issued him foam insoles, though he knew or should have known that they were useless to treat Plaintiff's condition. *Id.* These allegations support a claim of deliberate indifference under Count 1 against John Doe.

## Count 2

Plaintiff also brings state law claims of medical malpractice against John Doe, based on the same conduct detailed above. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along

with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. §5/2-622(a). A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. §5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavits or reports. Therefore, the claim in Count 2 shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required affidavit(s), if he desires to seek reinstatement of this claim. The certificate(s) of merit must also be filed, in accordance with the applicable section of §5/2-622(a). Should Plaintiff fail to timely file the required affidavits/certificates, the dismissal of Count 2 may become a dismissal with prejudice.

### **Injunctive Relief**

In the request for relief in the Complaint, in relevant part, Plaintiff seeks "a preliminary [and permanent] injunction to be seen by an orthopedic specialist, to receive orthopedic shoes capable of correcting [his] medical condition, and to be allowed to work any job assignment that [he] otherwise qualif[ies] for and [is] physically capable of performing." (Doc. 1, p. 30).

In order to obtain preliminary injunctive relief, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius,* 735 F.3d 654, 665 (7th Cir. 2013).

Plaintiff has not explained how he is at risk of suffering irreparable harm

without preliminary relief. He has allegedly been receiving inadequate care in prison since 2011, so the alleged deprivations do not appear to be new or urgent. *See* (Doc. 1, p. 31). Plaintiff is also no longer incarcerated at Big Muddy, the prison where the claims in Counts 1 and 2 arose, or Centralia, from which the claims in the severed case stem. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Further, the warden of the prison where alleged deprivations are ongoing is often the proper defendant for requests for injunctive relief. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Plaintiff is currently incarcerated at Taylorville Correctional Center, and Taylorville's warden is not a defendant in this case.

Accordingly, Plaintiff's request for a preliminary injunction is **DENIED** without prejudice. If Plaintiff believes he still requires injunctive relief despite his transfer from Centralia and Big Muddy, he may request a preliminary injunction by filing a separate motion pursuant to Federal Rule of Civil Procedure 65, in this or the newly severed case, should he so choose. However, any claims Plaintiff brings that involve defendants or events at Taylorville may be severed into a new action pursuant to *George* and FED. R. CIV. P. 18 and 20.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 1 against John Doe.

However, this defendant must be identified with particularity before service of the Complaint can be made on him. Where a prisoner's Complaint states specific allegations describing conduct of an individual prison staff member sufficient to raise a constitutional claim, but the name of that defendant is not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of that defendant. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the Warden of Big Muddy will be added as a defendant, in his or her official capacity only, and he or she shall be responsible for responding to discovery (formal or otherwise) aimed at identifying John Doe. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of John Doe is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### Pending Motions

Plaintiff's Motion for Extension of Time to File Exhibit 1-A (Doc. 2) is **DENIED** as moot. Plaintiff filed Exhibit 1-A on March 14, 2018. *See* (Doc. 7).

Plaintiff's Motion to Appoint Counsel (Doc. 4) is **REFERRED** to a United States Magistrate Judge for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 5) is **DENIED** as moot. Waivers of service of summons will be issued and served on the defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of

process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

## Disposition

The **CLERK** is **DIRECTED** to **ADD** in CM/ECF **WARDEN OF BIG MUDDY** (official capacity only) as a defendant in this action.

**IT IS HEREBY ORDERED** that **COUNTS 3**, **4**, and **5**, which are unrelated to the other claims in this action, are **SEVERED** into a new case against **SANTOS**, **MUELLER**, **KINK**, **STOCK**, **KREBS**, **DOWNES**, **JOHNSON**, **MCABEE**, **WALKER**, **ZELASKO**, **WEGMAN**, **LAHR**, **WEXFORD**, and **IDOC**.

The claims in the newly severed case shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1) and Exhibit (Doc. 7);
- The Motion to Appoint Counsel (Doc. 4); and
- The Motion for Leave to Proceed *in forma pauperis* (Doc. 3) and Prisoner Trust Fund Account Statement (Doc. 9).

Plaintiff **will be responsible for an additional $350 filing fee** in the newly severed case.[2] No service shall be ordered in the severed case until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this***

---

[2] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

***action are Counts 1 and 2, though Count 2 is being dismissed without prejudice herein***.

**IT IS FURTHER ORDERED** that **COUNT 1** will **PROCEED** against **JOHN DOE**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for the reasons stated herein.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to move the Court to reinstate the medical malpractice/negligence claim(s) in **COUNT 2** against John Doe, Plaintiff shall file the required affidavit(s) pursuant to 735 Ill. Comp. Stat. §5/2-622, within 35 days of the date of this order (on or before April 26, 2018). Further, Plaintiff shall timely file the required written report(s)/certificate(s) of merit from a qualified health professional, in compliance with §5/2-622. Should Plaintiff fail to timely file the required affidavits or reports, the dismissal of **COUNT 2** may become a dismissal with prejudice.

**IT IS FURTHER ORDERED** that **SANTOS**, **MUELLER**, **KINK**, **STOCK**, **KREBS**, **DOWNES**, **JOHNSON**, **MCABEE**, **WALKER**, **ZELASKO**, **WEGMAN**, **LAHR**, **WEXFORD**, and **IDOC** are **DISMISSED** from **this** action with prejudice for the reasons above.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **WARDEN OF BIG MUDDY** (official capacity only) and **JOHN DOE** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is

**DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant **JOHN DOE** until such time as Plaintiff has identified him by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United

States Magistrate Judge for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendant with particularity.  Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2018.03.22 14:12:35
-05'00'

**United States District Judge**