IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| JEFFREY EASTMAN, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 3:18-CV-543-NJR-MAB |
| DR. DENNIS LARSON, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter came before the Court on Defendant Dr. Dennis Larson's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 53). The Court held an evidentiary hearing on Dr. Larson's motion pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), on January 29, 2019. For the reasons set forth on the record and below, the motion is granted.

### BACKGROUND

Plaintiff Jeffrey Eastman, an inmate of the Illinois Department of Corrections, was born with a condition that causes the bones of his feet and ankles to collapse out of alignment when weight is put on them (Doc. 1, p. 24). This misalignment and malformation cause Eastman's bones to bear weight in an unnatural way, and, as a result, he has difficulty walking (*Id.*). He claims the condition "causes extreme pain and discomfort that is only alleviated if [he is] wearing braces that hold the ankles and feet in correct alignment." (*Id.*). As a child, Eastman was custom-fitted with orthopedic braces that kept his feet and ankles aligned (*Id.*). At age 12, he began using non-prescription footwear when he became too tall

for the braces (*Id.*; Doc. 7).

### A.     Eastman's Complaint

On March 7, 2018, Eastman filed a complaint pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was housed at Big Muddy River Correctional Center ("Big Muddy") (Doc. 1). Specifically, Eastman asserts that from October 2011 to July 2014, his complaints regarding his medical condition were ignored, as were his requests to see an orthopedic specialist (*Id.*, p. 25). On August 1, 2014, he finally saw Dr. Dennis Larson, who prescribed him foam insoles (*Id.*). Then, from October 2014 to November 2015, when Eastman complained the foam insoles were ineffective, he was ignored again (*Id.*). Eastman was transferred from Big Muddy to Centralia Correctional Center ("Centralia") on November 24, 2015 (Doc. 54-2).

On threshold review of his complaint pursuant to 28 U.S.C. § 1915A, the Court determined that Eastman stated two claims as to Dr. Larson:

**Count 1:**   While Plaintiff was at Big Muddy, Dr. Larson showed deliberate indifference to Plaintiff's serious medical need involving a deformity and arthritis in his feet and pain associated therewith in violation of the Eighth Amendment.

**Count 2:**   While Plaintiff was at Big Muddy, Dr. Larson committed Illinois medical malpractice/negligence in his treatment of a deformity and arthritis in Plaintiff's feet and pain associated therewith.

The Court dismissed Count 2 without prejudice, however, for failure to file an affidavit and written report by a healthcare professional indicating the claim is reasonable and meritorious, as required by Illinois law (Doc. 11). Eastman was given 35 days to file the necessary documents or the dismissal would be converted to a dismissal with prejudice (*Id.*). Eastman subsequently filed his own affidavit, but he could not get a prison physician to write

an affidavit for him and the prison would not send him out to get an outside opinion (Doc. 21). Because Eastman did not file the required affidavit, Count 2 will be dismissed with prejudice.

### B. Relevant Grievances

It is undisputed that Eastman filed two grievances relevant to his claims in this case. It is also undisputed that both of these grievances were filed after Eastman was transferred to Centralia Correctional Center on November 24, 2015.

#### i. June 2, 2016 Grievance

Eastman filed a grievance on June 2, 2016, directly with the Administrative Review Board ("ARB") because the grievance involved issues at two facilities (Doc. 54-3, pp. 23-25). Eastman complained that he had been requesting proper orthopedic shoes since 2011 for his feet and ankles (*Id.*). Eastman explained that without the proper support, his ankles come out of alignment and walking becomes very painful (*Id.*). He further stated that he constantly told the Healthcare Unit at Big Muddy about this problem, but they would not sign off to obtain his medical records (*Id.*). Instead, they ignored his requests from 2011 to 2014 (*Id.*). Once he saw the doctor, he only received foam insoles, which do not support his ankles and do not help at all (*Id.*). In 2015, he began having stabbing pains and burning sensations that "got worse and worse." The whole time he was wearing the insoles and telling healthcare (*Id.*). The grievance goes on to complain about events at Centralia Correctional Center that are not part of this suit (*Id.*). As relief, Eastman requested to see "an orthopedic specialist to be assessed for current damage to my feet/ankles and be recommended for the proper orthopedic shoes." (*Id.*).

The ARB responded on July 1, 2016, and told Eastman to provide a copy of the

Counselor's response, the Grievance Officer's response, and the Chief Administrative Officer's response (*Id.*). It also stated, "if you are having pain, put in for sick call." (*Id.*)

### ii. August 5, 2016 Grievance

Having been instructed by the ARB to obtain institutional responses to his June 2016 grievance, Eastman refiled his grievance with the counselor at Centralia on August 5, 2016 (Doc. 1, p. 20). The counselor responded to the grievance on August 11, 2016, stating: "Per HCU—A x-ray of R ankle shows mild arthritis of ankle. No bony fracture or dislocation. MD suggested arch supports in March 2016. Orthopedic shoes not indicated at this time according to MD." (*Id.*). On August 30, 2016, the Grievance Officer recommended denying the grievance, finding that Eastman's medical concerns were being addressed by the health care staff (*Id.*, p. 19). If he had any further medical concerns, Eastman was directed to submit a request slip to HCU (*Id.*). The Chief Administrative Officer concurred with the Grievance Officer's recommendation on September 6, 2016 (*Id.*).

Eastman appealed the grievance denial to the ARB (*Id.*, p. 18). The ARB received the grievance on September 30, 2016, and denied it on February 27, 2017 (*Id.*). The ARB stated there would be no further redress, as no justification was provided for additional consideration (*Id.*). The ARB further stated: "Requests are not grievable issues. No dates provided for denial of treatment." (*Id.*)

### C. Motion for Summary Judgment

On October 9, 2018, Dr. Larson filed the instant motion for summary judgment for failure to exhaust administrative remedies (Doc. 53). Dr. Larson's sole argument is that Eastman did not file a grievance in the proper timeframe under the Illinois Administrative Code. *See* 20 ILL. ADMIN. CODE § 504.810(a) ("A grievance must be filed . . . within 60 days

after the discovery of the incident, occurrence or problem that gives rise to the grievance."). Dr. Larson asserts that Eastman's complaint and grievance records indicate he did not file a grievance while incarcerated at Big Muddy and under the treatment of Dr. Larson. Further, it is undisputed that Eastman did not file any grievance pertaining to the conditions of his feet and ankles until at least June 2016—well after he was transferred to Centralia Correctional Center and more than 60 days after treatment by Dr. Larson had ceased. Accordingly, Eastman could not have exhausted his administrative remedies regarding the allegations against Dr. Larson.

In response, Eastman filed an affidavit explaining that from 2011 to 2014, he requested treatment in writing 14 times but was ignored (Doc. 56). On August 1, 2014, Dr. Larson finally saw Eastman for his disorder and prescribed arch support insoles (*Id.*).

On October 12, 2014, Eastman complained to healthcare that the insoles did not work (*Id.*). He did not receive a response to his healthcare request slip (*Id.*). On February 27, 2015, Eastman filed another healthcare request slip complaining of dull throbbing pains in his feet and ankles, but he did not receive a response (*Id.*) On April 30, 2015, Eastman he sent yet another request to healthcare complaining that he never received a response to his February 2015 request and that he continued to have burning and stabbing pains in his feet and ankles (*Id.*). Again, Eastman did not receive a response (*Id.*). Throughout this time, Eastman argues, he was unable to consult with a medical professional to determine whether the burning and throbbing sensations were related to a serious medical issue (*Id.*).

Upon transferring to Centralia on November 24, 2015, Eastman asserts the "negative impact" of Dr. Larson's "reckless disregard to proper treatment" continued to manifest itself—though he still did not know he had a claim (*Id.*). On March 5, 2016, Eastman twisted

his ankle while wearing the insoles prescribed by Dr. Larson (*Id.*). He claims did not know there was a correlation between his injury and the insoles prescribed by Dr. Larson in absence of proper orthopedic corrective shoes (*Id.*).

On April 16, 2016, an x-ray apparently showed he had arthritis and degenerative process, but he still had no confirmation from a medical professional that the treatment by Dr. Larson contributed to these conditions (*Id.*). Instead, Dr. Santos, the Centralia Medical Director, told Eastman the foam insoles were adequate and the x-ray showed no abnormalities (*Id.*). These "lies" kept him from knowing that the insoles were medically ineffective and failed to prevent otherwise preventable permanent damage (*Id.*).

By August 5, 2016, Eastman began suspecting that everything was a lie and the refusal to let him see a specialist "began to make sense." (*Id.*) He believed at that point that Dr. Larson had lied about the insoles being adequate (*Id.*). Furthermore, he believed his unanswered healthcare request slips from 2011 to 2015 were the result of a conspiracy between Dr. Larson and Wexford Health Sources not to answer them (*Id.*). At that point, "[a]ll of these correlations, plus the actions of others in Centralia, led him to file a grievance based on the totality of all events that took place at Big Muddy." (*Id.*)

Eastman asserts that, in September 2016, Dr. Garcia at Centralia confirmed that his condition was chronic and that Dr. Larson's ineffective treatment and reckless disregard helped cause his condition (*Id.*). Eastman argues that he had 60 days from the date he "actually possessed knowledge that would lead me to believe the defendant's treatment constituted a 'wrong' and I had a claim." He admits he knew he had a "medical problem" but claims he did not know that "permanent damage was occurring and that the defendant's method of treatment did nothing to prevent what was otherwise preventable, and did not

gain a full understanding of the effect, or lack thereof, his treatment had until September 21, 2016." (*Id.*) He says he did not know Dr. Larson's care correlated with the permanent damage suffered until he met with Dr. Garcia on September 21, 2016 (*Id.*).

Eastman further argues that the ARB decided his grievances on the merits and did not reject them as untimely or raise the issue of timeliness. Thus, the issue of timeliness was waived.

## **LEGAL STANDARDS**

Summary judgment is proper only where the moving party can demonstrate no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (*citing Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647-48 (7th Cir. 2016)).

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all administrative remedies before bringing suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Proper exhaustion requires an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). In *Pavey v. Conley*, the Seventh Circuit instructed district courts to conduct a hearing to determine whether a plaintiff has exhausted his remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Under the Illinois Administrative Code, an inmate must file a grievance with the counselor or Grievance Officer within 60 days after the discovery of the incident, occurrence

or problem that gives rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). However, if an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered. *Id.*

## DISCUSSION

It is undisputed that Dr. Larson treated Eastman on August 1, 2014, and prescribed foam insoles that Eastman received on August 20, 2014. It is also undisputed that Eastman left Big Muddy on November 24, 2015, and did not file a grievance complaining about his lack of care and foot/ankle issues related to the foam insoles until June 2016—well after the 60-day deadline imposed by the Illinois Administrative Code. Thus, the only question for this Court is whether Eastman had "good cause" for failing to file his grievance regarding his treatment at Big Muddy within the 60-day window.

To demonstrate good cause, Eastman argues he did not know he had a claim until Dr. Garcia confirmed the insoles were doing more harm than good in September 2016. Unfortunately for Eastman, waiting for a doctor to confirm a suspected problem is insufficient to establish good cause in Illinois. In *Macon v. Mahone*, the Seventh Circuit addressed a similar situation and found the plaintiff had not established good cause for filing a late grievance. *Macon v. Mahone*, 590 F. App'x 609, 612 (7th Cir. 2014). In that case, the plaintiff argued he "did not have firm evidence that his doctors had indications of kidney disease before 2010 until he received his lab reports in June 2011." *Id.* Therefore, he argued, he had "good cause" for the delay in filing his grievance. *Id.* The Seventh Circuit disagreed:

> Macon's decision to wait for lab reports to confirm his "concerns," which he concedes arose in 2010, is not good cause for his late filing. The reports may have helped to prove his doctors' earlier knowledge, but the statements from his nurse and his sister, also a nurse, were enough for Macon to realize the grounds of his grievance.

*Id.*

Likewise, Eastman should have realized the grounds for a grievance when he continued to request additional medical care and to see an orthopedic specialist after Dr. Larson prescribed the foam insoles—requests that went ignored. For example, Eastman's healthcare request slip from October 12, 2014, states that the insoles "do not correct my medical condition and they do not alleviate pain when I walk. Could I try something else? Thank you!" (Doc. 1, p. 59). Another healthcare request from February 27, 2015, states he is having throbbing pains in his feet and ankles and thinks he might be getting arthritis. He asks to please be seen by an orthopedic specialist (Doc. 1, p. 60). Yet another request from April 30, 2015, complains that he still has not received a response to his request slip from February 2015 about the dull throbbing and asks to be seen by an orthopedic specialist to get orthopedic braces. (Doc. 1, p. 61).

Clearly, Eastman knew that he was in pain, the insoles prescribed by Dr. Larson were not working for him, and the Healthcare Unit was ignoring his requests for medical care. While Dr. Garcia's opinion in September 2016 that the insoles were ineffective and causing harm may help to prove Dr. Larson's knowledge, Eastman should have realized the grounds for filing a grievance before he was moved to Centralia. He could have filed a grievance within 60 days of October 12, 2014, February 27, 2015, or April 30, 2015 (the dates of his healthcare request slips) and still had a properly exhausted claim. Instead, he waited until June 2016 to file any grievances.

Eastman next asserts that the ARB did not reject his appeals as untimely, and, therefore, it does not matter whether the grievances were filed within the required 60 days.

It is true that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Here, however, the ARB did reject the appeals on procedural grounds. Eastman did not include any specific dates of medical care in his grievances, so the ARB could not assess whether the August 2016 grievance was timely filed. In response to the ARB, and without being requested to do so, Eastman provided the ARB with a list of the dates of his medical care (Doc. 1, pp. 10-11). Regarding the care he received at Big Muddy, however, he only says "there are more dates either from another facility, or that were not documented." The ARB does not appear to have responded to Eastman's letter.

The ARB also rejected Eastman's June 2016 grievance on procedural grounds, noting that Eastman should have provided the requisite institutional responses. The ARB appears to have been responding to Eastman's claims regarding his care at Centralia, disregarding his complaints about Big Muddy as background information. The Court is aware this may have been a mistake by the ARB with regard to the portion of the grievance pertaining to Big Muddy. The grievance form specifically directed Eastman to file any complaint regarding an issue involving another facility directly with the ARB, which is what he did (Doc. 54-3, p. 24). Nevertheless, this does not excuse the fact that the grievance was untimely. *See Miller v. Baldwin*, No. 3:17-CV-859-NJR-DGW, 2018 WL 6716065, at *2 (S.D. Ill. Dec. 21, 2018) (warden's failure to respond to emergency grievance was irrelevant when grievance was untimely). The ARB never reached the merits of Eastman's claim, and the prison administration never had notice of the problem and an opportunity to correct it. Thus, Eastman failed to exhaust his

administrative remedies prior to filing suit.

## Conclusion

Defendant Dennis Larson's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 53) is **GRANTED**. Count 1 is **DISMISSED** for failure to exhaust his administrative remedies; Count 2 is **DISMISSED with prejudice**. This entire action is **DISMISSED**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   January 30, 2019**

                                                                                  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                                                                  **NANCY J. ROSENSTENGEL**
                                                                                  **United States District Judge**